JANVIER, ¡Judge.
When, on March 21, 1936, Jules Cyprian, a colored employee of Jahncke Service, Inc., was shot and killed by Frank Grote, a watchman of the Jahncke Company, there was created a legal situation from which there has resulted most complicated and long drawn out litigation.
Shortly after the death of Cyprian, Stella B. Cyprian, his legal wife, brought suit in compensation alleging that the death of Cyprian had resulted from an accident arising out of and occurring in the course of his employment; that she was his legal wife, and that at the time of his death she had been living with him and was being supported by him.
The defendant company denied that Stella B. Cyprian had been living with Cyprian, or was being supported by him, but a compromise was agreed upon and was approved by the Court and, in accordance with this compromise, Stella B. Cyprian was paid $500 cash.
Ten years later, on November 17, 1946, the present suit was filed in the Civil District Court for the Parish of Orleans by Annie B. Williams who brought the suit on behalf of the minor, Dorothy Mae Cyprian, alleging that she, Annie B. Williams, was the tutrix of the minor child; that she had never been married to Cyprian but was living with him and that the minor child was the daughter of Jules Cyprian and herself; that within the contemplation of the compensation statutes of Louisiana the child, at the time of the death of Cyprian, had been a member of his family and was actually residing with him and being supported by him. She claimed compensation on behalf of the minor at $13 per week for 300 weeks, commencing March 21, 1936, with legal interest on each payment from the date of its maturity.
The Jahncke Company denied all liability on several grounds. It admitted the death of Cyprian and that he had been in its employ, but denied that he was earning the amount claimed by plaintiff. It denied that the minor child, Dorothy Mae, was the child of Cyprian or was acknowledged by him, and denied that the child was living with him as a member of his family at the time of his death. The Jahncke Company further averred that the deceased employee had been legally married to Stella Brown Cyprian, who had been living with him and was dependent upon him at the time of his death, and that in the compensation suit which had been brought by Stella B. Cyprian, the compromise had been approved by the Civil District Court for the Parish of Orleans and the amount agreed upon had been paid to Stella B. Cyprian, and that therefore since there was a legal wife who was entitled to compensation, there could be no recovery on behalf of the minor who was not the child of the decedent-but at best was, within the contemplation of the compensation statutes, only a member of his family.
As its principal defense the Jahncke Company averred that the death of the employee had resulted from his wilful intention to injure someone else, from his intoxication at the time of his death, and from his deliberate breach of statutory regulations affecting safety of life or limb.
Before filing answer the Jahncke Company had filed a plea of prescription of *670 ore year and exceptions of no right of action and no cause of action. The plea of prescription was abandoned because of the fact that under our compensation statutes prescription does not run against a minor until a personal representative of the minor has been appointed. See section 16, Act No. 20 of 1914, as amended, Act No. 38 of 1918, sec. 1, LSA-RS 23:1234.
When the matter was tried before the Civil District Court for the Parish of Orleans, the suit was dismissed, and the matter then came before us on appeal. In the opinion rendered by us, La.App., 38 So.2d 400, 402, we stated in detail and discussed at length the various contentions which were presented, to wit: that there can be no claim on behalf of an illegitimate minor child so long as there is in existence a legal wife with the right to claim compensation, and that the death of Cyprian resulted “from injuries received as a result of ‘his wilful intention to injure another and/or * * * intoxication at the time of the injury and/or * * * deliberate breach of statutory regulation affecting safety of life or limb.’ ”
In that opinion we discussed the legal question of whether an illegitimate child is entitled under any circumstances to recover compensation, and' we held that such a child, if not otherwise barred by the presence of some other claimant with a prior or superior right, may recover as a member of the family of the deceased employee, and we also discussed the question of whether settlement with a person claiming to have a right superior to the right of such illegitimate minor should deprive the minor of all right to recover and we said that, as a matter of law, the mere fact that a settlement has been made with a legal widow does not of itself bar such minor from recovering, and that for such a settlement to have such an effect it is necessary that the employer show that the legal widow with whom the settlement was made was actually entitled to compensation either because she had been living with him with the resulting presumption of dependency, or because she was actually being supported by him at the time of his death.
However, having indulged in a length}* dissertation on these two interesting questions of law, we did not decide the case on either of those issues but held that there could be no recovery because we felt that tíre record showed that Cyprian had been killed as a result of 'his own deliberate attempt to kill some one else, and that consequently there could be no recovery by any one. We rteachedl that conclusion practically entirely because there was in the record the testimony of a witness which had been taken in another litigated matter, and we said that the testimony of that witness could be considered because the witness had died and because the parties and the issues which were found in the other litigated matter were so nearly identical with those here that, as the best evidence available, that testimony should be admitted in this case. The Supreme Court granted a review and held that the testimony of that witness was inadmissible and should not have been considered. The Supreme Court then remanded the matter to the Civil District Court for further proceedings. Williams v. Jahncke Service, Inc., 217 La. 1078, 48 So.2d 93, 94.
When the matter was again presented in the Civil District Court without the testimony of that witness, there was practically nothing in the record to support the contention of the defendant that the employee had been killed as the result of his own deliberate attempt to kill some one else and there was practically no evidence that, at the time, he had been intoxicated. Consequently the District Court rendered judgment for plaintiff for 300 weeks at $4.81 per week, with legal interest on each payment from the day on which it became due and held that the first payment became due on March 21, 1936. From that judgment defendant has appealed suspensively.
Defendant again stresses before us all o-f the defenses originally made and also complains that, for other reasons, which we shall discuss, the judgment is erroneous.
Counsel for plaintiff strenuously argue that all of the other issues, which were originally presented, haive been disposed of *671 in our original opinion and that the Supreme Court expressed approval of all of our findings on all of those issues, and counsel for plaintiff further contend that the sole remaining issue is whether, without the testimony which the Supreme Court held to be inadmissible, there is in the record sufficient testimony to the effect that the employee met his death as the result of his own aggression. Counsel point to the fact that in its opinion the Supreme Court, after stating that it had granted the review because it felt that we had been in error in admitting the testimony of the witness referred to, said: “ * * * After a careful review of the record, the opinion of the appellate court and the authorities cited therein, we have concluded that the appellate court has correctly disposed of the other issues raised in the case. * * * ”
We feel that the Supreme Court did not say, and did not intend to say, that we had done anything more than correctly state the law applicable to each of the several questions which were presented.
All that we said was that, as a matter of law, an illegitimate child, who is dependent and who is a member of the family of a deceased employee, may, if there is no superior claimant, have a right to claim compensation. We did not go further and say that under the facts presented here this particular child was shown to be a dependent member of the family, nor did we go further and say that though there was a legal widow she had no right to recover because she had not lived with nor been dependent upon the deceased employee. All that we said was that, where there is a legal widow, her existence will not deprive a person with a subordinate right from exercising that right unless the widow herself is entitled to compensation either because she was living with the deceased or because she was being supported by him. In other words, we did not pass upon the facts on those two issues but merely stated what we thought to be the law applicable ■ theireto and all that the Supreme Court did as to those issues was to say that this court had correctly stated the law.
We think then that there are several questions which are properly before us at this time. The first is that on which the case was originally decided — whether or not, with the elimination of the objectionable and inadmissible testimony, there is in the record sufficient other evidence to show that the deceased employee was killed as a result of his own deliberate attempt to injure another, or as a result of his own intoxication. And we shall immediately dispose of that issue by merely stating that if there be eliminated from the record the objectionable testimony, by no stretch of the imagination can it be said that the record sustains this particular defense. It follows from this that if there is any claimant entitled to compensation, compensation is due.
We therefore pass to the contention that the settlement with the legal widow, Stella Cyprian, constitutes a bar to the claim of any one else, and we have already said that her mere existence and the mere fact that settlement was made with her does not constitute a bar to the claim of any one else in a subordinate group unless the evidence shows that she was living with or being supported by the deceased at the time of his death.
And we find it impossible to treat seriously the claim of Stella Cyprian that prior to the death of the deceased employee, he was contributing regularly to her support. She had separated from him several years before, had moved to Mobile, had left him because he was living with other women, knew that he was receiving only $18 per week and yet contends that regularly each week 'he mailed to her $10. However,in heir testimony, on several occasions, she made statements which indicated plainly that no such contributions had been made. On one occasion she was asked: “Up to the time Jules left you, who supported you?”
and she apparently misunderstood the question and thought she had been asked who had been supporting her prior to his death, or prior to the time at which she was testifying, because she said: “I have been supporting myself, working.”
*672 And later, after having said that on each occasion when the employee sent her $10 he wrote a letter, she said that about a month before his death s'he became convinced that he was not going to send her any money and had therefore destroyed all the letters. She said: “ * * * I had done away with them before he died, because I figured he weren’t going to give me no more money no more, and I had decided not to bother him no more.”
There is some other evidence to the effect that a friend, Willie Mae Davis, had assisted in the correspondence between Stella Cyprian and the deceased employee, but this evidence too is also unbelievable.
Our conclusion is that prior to the death of Cyprian he had not been supporting nor contributing to the support of Stella 'Cyprian; that she had not been living with him, and that consequently .she was not entitled to compensation. It necessarily results that settlement with her did not constitute a bar to the claim on behalf of the minor. Bradley v. Swift & Co., 167 La. 249, 119 So. 37.
The record leaves no doubt at all that at the time of his death the deceased employee was living with Annie B. Williams, though not married. to her, and that living as a member of his household — a member of his family — was the minor child on whose behalf this suit is brought. Therefore that minor child, as a result of the decision of the Supreme Court in Thompson v. Vestal Lumber & Mfg. Co., 208 La. 83, 22 So.2d 842, is entitled to compensation as a member of his family, and the only question left for consideration is what is the amount of compensation and whether interest is due on each weekly payment commencing from the death of the employee, or whether interest is due only from the time when the claim was presented in 1946, ten years after the death. ■
We first consider the question of the amount of the weekly award to which the minor is entitled. It is argued on behalf of the defendant that there is no proof of the amounts which the deceased employee had contributed to the support of the minor and that therefore only the minimum weekly award, $3, provided by the compensation statutes should be allowed instead of the $4.81 per week fixed in the judgment appealed from. The amount $4.81 was arrived at as 32i/¿%, of the weekly wage, $14.82, of the deceased employee and is the amount which would be allowed to a total dependent where there is neither widow, widower, nor child, nor dependent parent, nor brother nor sister for, in paragraph 8, section 1232, LSA-R.S. 23, it is provided: “ * * *■ If other dependents than those enumerated, thirty-two and one-half per centum of wages for one, * *
In contending that the allowance to¡ the child should be limited tO' $3 per week, counsel confuse the right of a total dependent, who does not have to prove the extent of prior contributions, with the right of a partial dependent in whose case, under section 1231, “* * * the weekly compensation to be paid shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents in the year prior to his death bears to the earnings of the deceased at the time of the accident.”
It is true that in the record the only evidence concerning the extent of the dependency of the minor on the deceased employee prior to his death is that given by the mother, Annie B. Williams, who testified as follows: ■
“Q. Who supported you and the child? A. He did.
* * * * * Jjc
“Q. Who supported the child before the man was killed ? A. Oh, he supported her the whole time until he got killed.”
This testimony is pointed to by counsel for defendant as showing that there is no proof of the extent of the dependency of the minor. We think, on the contrary, that it is proof that the minor was wholly dependent on the employee and that therefore her right to recover is fixed at 32}4% of the weekly wage and does not depend on the ■amount of the weeldy contributions which had been made prior to the death of the employee.
*673 Counsel for defendant place great reliance on Dudley v. Martin, La.App., 4 So.2d 102, 103, in which the Court said that the claimant could recover only the minimum because she “has not shown any definite amount regularly contributed to her support by her deceased son * *
But there the claimant, a mother of the deceased employee, was only a partial dependent. She herself worked on a strawberry farm and received some support from another son.
Also in Patin v. T. L. James & Co., La. App., 42 So.2d 304, 309, it was held that because of failure to prove the extent of prior contributions from the deceased employee, the compensation allowed the claimant should be limited to the $3 per week minimum. But there the claimant at the time of the death of the employee “was receiving partial support from three sources”. Obviously the claimant was only partially dependent upon the deceased employee.
In Powell v. Paramount-Richards Theatres, La.App., 22 So.2d 859, it was held that the claimant was entitled to only the minimum, but there again it was shown that she herself had worked and had contributed to her own support so that she was only partially dependent upon the deceased employee.
Our conclusion is that the minor in this case was totally dependent on the deceased employee and that compensation therefore was properly fixed at 321/2% of the weekly wages of the employee.
The final alternative contention of defendant is that even if it be held that the minor on whose behalf this suit is brought is entitled to compensation, and even if it be held that that compensation was properly fixed at $4.81 per week, interest should be allowed only from the day on which judicial demand was made and not from the day on which each payment would normally have become due. This argument is based on the settlement which was made with the legal wife, Stella Cyprian, when she files suit, and on what we think is a misconception of the meaning of section 1207, LSA-R.S. 23, the 'Compensation Act, which reads as follows: “Payment of compensation under this Chapter by an employer to a dependent subsequent in right to another or other dependent shall protect and discharge the employer unless and until the dependent or dependents prior in right have given the employer notice of his or their claim.”
We cannot see that that section has any application whatever to the situation here. What that section very plainly means is that if there are two claimants — one in what may -be called the priority group in which is found a wife or a child, and the other in the subordinate group such as a mother or a father, where the right to recover exists only if there is no one in the priority group, and the employer, without knowledge of the fact that there is a claimant in the first group settles with one in the second group-, that settlement protects the employer against the obligation to pay interest to the priority claimant until the priority claimant actually makes his or her existence known to the employer. Here that is not what occurred. The first claimant was a wife who, if she had been living with or dependent upon her husband, would have been a member of the first or priority group. The other claimant, the minor, was entitled to compensation only as “a member of the family” and if the wife’s claim had been well-founded, the member of the family, the minor, would have had no claim.
Under these facts, the settlement with the wife, since she was not living with nor dependent upon the deceased employee, did not protect the employer against the claim of the minor for interest. If the claim of the wife had been well founded, payment to her would have barred the claim of the minor not only for interest but in its entirety. But since the wife had no legal claim, settlement with her had no legal effect and the claim of the minor must be paid with interest just as though there had been no claim by or settlement with the non-dependent wife.
Since defendant is not protected against the payment of interest by that settlement, it follows that legal interest is properly due on each weekly payment from the time *674 on which it was paj^able. See Garcia v. Salmen Brick & Lumber Co., 151 La. 784, 92 So. 565; Black v. Louisiana Cent. Lumber Co., 161 La. 889, 109 So. 538; Harris v. Long Bell Lumber Co., 17 La.App. 52, 135 So. 246; Huval v. Sexton Corp., 19 La.App. 198, 139 So. 739.
The judgment appealed from is affirmed at the cost of appellant.
Affirmed.